

The following constitutes the order of the Court.
Signed: June 16, 2022

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

In re:

SONJA NICOLLE COLBERT,

              Debtor.

Case No. 19-41729 CN
Chapter 11

**MEMORANDUM DECISION RE: DEBTOR'S OBJECTION TO CLEVELAND MITCHELL PROOF OF CLAIM**

On December 2, 2021, the court commenced a multi-day evidentiary hearing to resolve debtor Sonja Colbert's Objection to Claim No. 2-4 filed by Cleveland Mitchell. All appearances were stated on the record, and the parties have consented to the entry of a final judgment by this court. Mitchell's proof of claim is based on the Alameda County Superior Court action that he commenced against Colbert on November 6, 2017. His complaint - and hence his proof of claim - arises from the parties' contentious landlord-tenant relationship. Colbert (through a trust) owns a multi-unit apartment building located at 1864 11th Avenue in Oakland, California. Mitchell, a formerly homeless Vietnam veteran, rented a two bedroom apartment at that property between 2014 and 2017. He asserts that Colbert violated his common law and statutory rights as a tenant, and his Superior Court complaint contains causes of action for tortious and contractual breaches of habitability, breach of quiet enjoyment, breach of contract, private nuisance, premises liability, retaliation, negligence, and violations of certain Business and Profession Code sections and local landlord/tenant ordinances. After Mitchell presented his case, Colbert

moved for a partial judgment under Federal Rule of Bankruptcy Procedure 7052(c) with respect to Mitchell's first, second, third, fourth, fifth, sixth, seventh, ninth, tenth, and twelfth causes of action. By order dated January 21, 2022, this court granted Colbert's Rule 7052 motion in substantial part (the "Rule 7052 Memorandum Decision"), which left the fifth, eight, tenth, eleventh, twelfth and thirteenth causes of action unresolved. Colbert thereafter presented her case in chief, and the parties rested. The following constitutes this court's findings of fact and conclusions of law regarding the remaining causes of action under Federal Rule of Bankruptcy Procedure 7052. Due to the evidence presented during Colbert's case in chief, these findings of fact differ from those contained in the Rule 7052 Memorandum Decision. And, to the extent that this memorandum discusses events that are not directly relevant to the remaining causes of action, it does so to provide context.

## FINDINGS OF FACT

On July 3, 2014, Mitchell, as the tenant, and Colbert, as the landlord, signed a residential lease for a two bedroom apartment (the "Unit") in Colbert's apartment building located at 1864 11th Avenue, Oakland, California (the "Property"). The one year lease commenced on July 7, 2014 and set Mitchell's rent at $1,150 per month (the "Lease"). After the lease term expired, Mitchell continued to occupy the Unit until he vacated on October 20, 2017.

Mitchell is a Vietnam veteran who has experienced bouts of homelessness. As a veteran, Mitchell was enrolled in several housing programs (some of which were funded by the federal government and administered locally) to assist him in securing permanent housing. First, Mitchell participated in HUD-VASH—a federally funded program that helped homeless veterans secure housing and address their medical needs. Mitchell was assigned a case manager, Elaine Miller, who helped Mitchell locate and lease the Unit. Miller was familiar with Mitchell's health challenges - which included insulin dependent diabetes, unresolved foot ulcers which led to an "unsteady shuffling gate," and two strokes, one of which he suffered while living in the Unit - and she visited Mitchell at

least once a month after he moved into the Unit to help Mitchell schedule medical appointments, remain current with his medications, discuss healthy food choices, and address any ongoing housing issues. These meetings occurred at the Unit.

Mitchell also participated in the U.S. Department of Housing and Urban Development's Housing Choice Voucher Program, colloquially known as "Section 8." Mitchell's participation in Section 8 required him to sign a Housing Assistance Payments (HAP) Contract, the terms of which were incorporated into the Lease. The HAP program required Mitchell to pay a portion of the Lease's monthly rent, with the remainder being paid by the Oakland Housing Authority, the entity which administered the local voucher program (the "OHA"). Mitchell was responsible for $225 of the Lease's original, monthly rent, and the OHA paid the remaining $925 per month.[1] To ensure that the HAP funds were spent on adequate housing, the OHA conducted an initial, pre-Lease inspection of the Property and annual inspections thereafter. The Property failed its initial inspection (conducted on June 17, 2014) but passed after Colbert made minor repairs. Mitchell thereafter moved into the Unit in early July.

Several of Mitchell's causes of action accuse Colbert of failing to adequately maintain the Unit. Colbert claims that she properly maintained the Property and the Unit, and that she and her handymen, including Randy Hall, timely addressed any issues that Mitchell brought to their attention.

Mitchell testified that his difficulties with the Unit began six months into his tenancy, and that over the course of his tenancy the Unit was infested with cockroaches, had plumbing problems (including clogged pipes, broken faucets, and chipped bathtub enamel), and a poorly constructed exterior stairway. As discussed in the Rule 7052 Memorandum Decision, Colbert addressed the plumbing problems and eventually

---

[1] Section 8 prohibited Colbert from unilaterally changing the Unit's rent. Only the OHA had the authority to alter the rent, and as discussed below, the OHA authorized several rent changes during Mitchell's tenancy.

Case: 19-41729    Doc# 396    Filed: 06/16/22    Entered: 06/16/22 11:28:29    Page 3 of 25

removed the rear steps.[2]  Randy Hall testified that he visited the Unit seven to ten times during Mitchell's tenancy to fix the plumbing problems and attend annual OHA inspections.  He expressed grave concerns with the activities he witnessed in the Unit during 2016.  Hall testified that the Unit's spare bedroom was being used for prostitution and that he had been solicited while working on the Unit's plumbing.  He also stated that he saw what he believed was drug paraphernalia in the Unit, and that he had once been locked in the Unit without any means to escape.  The court finds Hall to be a credible witness.   Colbert also believed that the Unit was harboring illegal activity.  She testified that Mitchell's niece resided with him during some portion of his tenancy and that she was a prostitute.  She believed that the persons who were visiting the Unit damaged the Property by removing smoke detectors and lights, extinguishing cigarettes on the common area interior walls, and created substantial plumbing blockages by flushing condoms down the toilet. Colbert testified that she contacted the OHA police department in or around November 2016 regarding this activity, and they simply referred her to the OHA's compliance unit.  Colbert could not identify any of the culprits nor unhesitatingly state that the Unit's alleged visitors caused these problems, and Mitchell denied that the Unit was the epicenter of any illegal or criminal conduct.

Colbert made several, unsuccessful attempts to evict Mitchell in 2016.   These clumsy (at best) efforts are at the heart of the remaining claims before this court.  Colbert started by accusing Mitchell of being in default of his rent, expanded her eviction notices to include allegations that he was abusing drugs and alcohol and allowing prostitutes to ply their trade in the Unit, and brought in quick succession an unlawful detainer that she tried and lost, a second unlawful detainer (which she dismissed) in which she sought (among other things) to collect the same rent as in the first unlawful detainer action, and a small claims action to collect rent - which she also failed to prosecute.

---

[2]  This court incorporates herein the Rule 7052 Memorandum Decision's findings of fact regarding Mitchell's complaints and Colbert's responses.

Colbert served her first 3 Day Notice to Quit on or about September 8, 2016 (the "September 2016 Rent Notice"). The September 2016 Rent Notice informed Mitchell that he was $1,104.00 in arrears on rent due for November 2015 through July 2016. Because the Unit was subject to the City of Oakland's Just Cause Ordinance, the September 2016 Rent Notice stated that Colbert served it "in good faith with honest intent and with no ulterior motive . . . ." Mitchell did not cure the alleged rent default, and Colbert filed her Unlawful Detainer complaint in *pro per* on September 13, 2016 in Alameda County Superior Court. After retaining counsel, the parties tried the unlawful detainer action before a jury for multiple days until a verdict was reached on November 16, 2016. During the trial, Colbert's attorney – for reasons not fully revealed to this court - instructed Colbert to inspect the Property's air vents. Colbert and Hall visited the Property for that purpose, and during their inspection they noticed two black garbage bags on the side of the Property that contained hypodermic needles, liquor bottles, used condoms, and prescription drug containers with Mitchell's name on them. Colbert and Hall testified that they believed the garbage bags were tossed from an apartment window. As discussed below, the garbage bag contents became the fodder of a subsequently served 90 Day Notice to Quit.

The unlawful detainer jury returned a verdict in Mitchell's favor on November 16, 2016. The jury specifically determined, among other things, that Mitchell did not fail to pay his rent and that Colbert filed the unlawful detainer action "without good faith, honest intent or ulterior motive."

This court perceives why Colbert commenced this unlawful detainer action. The OHA issued a "Notice of Rent/HAP Change" on September 30, 2015 which increased the Unit's monthly rent to $1300 and Mitchell's share of the rent to $373/month. Elaine Miller did not receive notice of this increase (she testified that OHA was not required to notify her) and Mitchell testified that he never received it.[3] As a result, Mitchell

---

[3] Had she received the notice from the OHA, Miller would have informed Mitchell of the increase and made sure that he paid it. Miller's emails to Colbert during this time informed her that Mitchell liked the Unit and wanted to stay there (notwithstanding, this

Case: 19-41729    Doc# 396    Filed: 06/16/22    Entered: 06/16/22 11:28:29    Page 5 of 25

continued to pay Colbert $235/month in rent, and the rent arrears listed in the September 2016 Rent Notice reflect his failure to pay the increased rent.[4]

On November 18, 2016 - two days after the entry of the unlawful detainer judgment - Colbert served a second 3 Day Notice to Quit which sought to recover the very same rent at issue in the unlawful detainer trial (the "November 2016 Rent Notice"). Colbert justified her continued pursuit of this rent on her appeal of the unlawful detainer judgment, which, she believed, left the issue unresolved (while Colbert's notice of appeal was admitted into evidence, this court is unaware of the results of that appeal). The November 2016 Rent Notice was accompanied by a "Three Day Notice to Cure Covenient (sic) or Quit 1161(3)"[5] which listed several additional grounds to terminate the Lease, including Mitchell's alleged use of drugs and alcohol in the Unit, his alleged use of the Property's garbage bins to dispose of his hypodermic (insulin) needles, and a vague reference to criminal activity affecting the health and safety of his fellow tenants and neighbors. The November 2016 Illegal Activities Notice required Mitchell to correct these lease violations or vacate the Unit.

The allegations of drug and alcohol use and criminal activity were based on the contents of the aforementioned garbage bags and Colbert's belief that the Unit was being used for prostitution. The court notes that some of the alleged violations - in particular the consumption of alcohol in the Unit - were not Lease violations.

Mitchell did not respond to the November 2016 Rent and Illegal Activities Notices, and Colbert filed a second unlawful detainer action (with an attorney ghost-writing the complaint) on November 28, 2016 to obtain possession of the Unit and recover unpaid rent (Mitchell stated that he attempted to pay rent after September 2016,

_____

court presumes, the cockroaches and plumbing).

[4] Interestingly, the jury's special verdict form states that Mitchell's rent was $235/month.

[5] The court shall refer to this second notice as the "November 2016 Illegal Activities Notice."

- 6 -

but Colbert refused to accept it). Colbert testified that she later learned that her appeal of the unlawful detainer judgment made this second action unnecessary, and she thereafter dismissed it.

Colbert served her final notice to terminate the Lease on January 4, 2017. Her "(90) NINETY DAY NOTICE TO TERMINATE TENANCY ("90 Day Notice")" contained a kitchen-sink like mix of allegations that included failure to pay rent and both generic sounding and specific allegations of "illegal and criminal" conduct. Colbert conceded that she did not have personal knowledge of some of the allegations but included them on the advice of her unlawful detainer counsel, who did not testify at trial.

The 90 Day Notice introduces itself as a "Notice" of "Good Cause/Other Good Cause/Just Cause for Eviction" and recites several provisions from the City of Oakland's Just Cause Ordinance. It then lists numerous grounds for eviction, which include:

1. Colbert's desire to receive more rent for the Unit.

2. Non-payment of rent from May 2016 – January 2017. Ironically, this allegation failed to account for both the results of the unlawful detainer trial and the rent increases authorized by the OHA;

3. Criminal activity, including undefined "criminal drug activity on or near the premises by the tenant, household member, guest of the tenant or any person under the tenant's control; patterns of illegal drug use that interfere with the health, safety or right to peaceful enjoyment of the premises of other residents; and any other criminal activity that threatens the health, safety or right to peaceful enjoyment of the residence by other occupants of the premises (including property management staff) or residents in the immediate vicinity; and

4. "The tenant's avoidance of prosecution, custody or confinement for a crime, after a conviction or an attempt to commit a crime, which is considered a felony under local laws from which the tenant is fleeing; and the tenant's violation of the conditions of probation or parole imposed by federal or state laws."

- 7 -

The 90 Day Notice next states that Colbert had asked Mitchell to "stop the activity" but that he has continued to, among other things:

1. Use drugs in the Unit;
2. Invite adults to use drugs in the Unit;
3. Use alcohol in the Unit;
4. Dispose hypodermic needles, human feces and used condoms in the garbage bins;
5. Allow prostitution in the Unit and the solicitation thereof at the Property;
6. Allow adults to live in the extra bedroom;
7. Throw garbage on the Property's grounds;
8. Prevent PG&E from lighting the Unit's heater, and fail to replace a) broken blinds, b) the window rope, c) blown fuses in the fuse box, and d) the building light that Mitchell allegedly removed from the Property's two exterior front doors.

Colbert did not file a third unlawful detainer action or any other litigation on account of these alleged violations, and she alternatively testified that she served the 90 Day Notice to force Mitchell to pay his rent arrears (which concededly included rent due after September 2016) and to address the criminal activity in the Unit. She denied that the 90 Day Notice constituted harassment. This denial notwithstanding, the 90 Day Notice was a "spaghetti against the wall" compendium of alleged lease violations designed to drive Mitchell out of the Property. Instead of limiting the 90 Day Notice to her verifiable concerns regarding prostitution and unpaid rent, Colbert included acts which did not violate the Lease (i.e., alcohol consumption in the Unit), were not grounds to terminate (her desire for more rent[6]) or were simply impossible to address due to their lack of specificity. Colbert also made no attempt during trial to introduce evidence of many of these alleged Lease violations. Colbert also did not testify that she provided

---

[6] *See* Oakland's Tenant Protection Ordinance, section 8.22.360(A).

Case: 19-41729    Doc# 396    Filed: 06/16/22    Entered: 06/16/22 11:28:29    Page 8 of 25

Mitchell with a preliminary written notice (before she served the 90 Day Notice) directing Mitchell to cease damaging the Property and interfering with the peace and quiet of the Property's other tenants.

Colbert's final piece of litigation was a small claims action that she filed on January 4, 2017 to collect rent from Mitchell. Her complaint alleged that Mitchell owed $2,482.00 in rent due for May 2016 - July 2016 and September 2016 - March 2017.[7] Colbert dismissed the small claims action after Mitchell vacated the Unit in October 2017.

Mitchell testified that Colbert's eviction notices and litigation tactics upset him. Elaine Miller communicated with Colbert throughout this period, and she thought Colbert was unstable and her conduct confusing. While Colbert knew that Mitchell had a case manager, she never discussed the rent arrears with Mitchell or Miller before she served the September 2016 Rent Notice, and she testified that an unnamed OHA employee had recommended that she evict Mitchell. The OHA employees who testified at trial stated that such advice is antithetical to OHA's mission of housing the homeless. Miller also testified that Colbert never responded to her repeated offers to obtain funding to pay Mitchell's arrears stemming from the September 30, 2015 OHA rent increase and that she informed Colbert that she was trying to relocate Mitchell.[8] Miller testified that Colbert's litigious nature and Mitchell's difficulty with stairs were the predominant factors in his decision to move, and he vacated the Unit on October 20, 2017. Mitchell believed that a

---

[7] Colbert did not explain why the complaint included future rent. The court understands that Colbert rejected Mitchell's efforts to pay October, November and December 2016 rent. Despite this evidence, Mitchell has not raised this conduct as grounds for recovery under any of his causes of action.

[8] The September 30, 2015 rent increase notice was the first of three rent change notices issued by the OHA during Mitchell's tenancy (see Exh. E). Miller questioned whether Mitchell received timely notice of the September 30, 2015 notice, and she testified that OHA never satisfactorily explained the reason for this rent increase. Mitchell testified that he otherwise paid or offered to pay his share of the rent under the two other rent/HAP notices.

- 9 -

substantial amount of the Unit's furniture and personal effects (which had been donated to him) were infested with cockroaches, and he left them at the Unit.[9]

## CONCLUSIONS OF LAW

Unless otherwise stated, Mitchell has the ultimate burden of proving the merits of his causes of action. Under California law, the "default standard of proof in civil cases is the preponderance of the evidence." *Conservatorship of Wendland*, 28 P.3d 151, 169 (Cal. 2001) (citing Cal. Evid. Code § 115).

**Breach of Quiet Enjoyment, Cal. Civ. Code § 1927**

Mitchell has not established that Colbert breached the covenant of quiet enjoyment. A breach of the implied covenant of quiet enjoyment encompasses two different claims: (1) a contractual claim when a tenant's use of the premises is disturbed but they nonetheless remain in the premises, and (2) a tortious claim for wrongful eviction. *Ginsberg v. Gamson*, 141 Cal. Rptr. 3d 62, 82 (Cal. Ct. App. 2012); *see also Guntert v. City of Stockton*, 126 Cal. Rptr. 690, 694-95 (Cal. Ct. App. 1976) (recognizing that a lessor has a choice of remedies for breach of the covenant of quiet enjoyment).

Every lease contains an implied covenant of quiet enjoyment in the absence of language to the contrary. *Andrews v. Mobile Aire Estates*, 22 Cal. Rptr. 3d 832, 838 (Cal. Ct. App. 2005). This covenant "insulates the tenant against any act or omission on the part of the landlord, or anyone claiming under him, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy." *Id.* (citing *Green*, 517 P.2d at 1174, n. 10). To assert a contractual breach of this covenant, a tenant must demonstrate that the landlord's acts or omissions substantially interfered with their right to use and enjoy the premises for the purposes contemplated by the tenancy—minor inconveniences and annoyances are not actionable. *Andrews*, 22 Cal. Rptr. 3d at 839. In these instances, a successful plaintiff may recover contract damages. *Ginsberg*, 141 Cal.

---

[9] Mitchell left behind his love seat, mattress, bed frame, coffee table, dishes and stereo equipment.

Case: 19-41729   Doc# 396   Filed: 06/16/22   Entered: 06/16/22 11:28:29   Page 10 of 25

Rptr. 3d at 81; *see also Andrews*, 22 Cal. Rptr. 3d at 840 (for breach of the covenant of quiet enjoyment tenant may "sue for breach of contract damages . . . as well as for injunctive relief").

Because Mitchell vacated the Unit, the court presumes that he is only asserting a tortious breach of the covenant. A tortious breach of the implied covenant of quiet enjoyment arises from the tenant's wrongful eviction, which perforce interferes with a tenant's right to undisturbed possession of leased premises. *Ginsberg*, 141 Cal. Rptr. 3d at 82; *see also Aaker v. Smith*, 196 P.2d 150, 156-57 (Cal. Ct. App. 1948) (affirming trial court's finding that the landlord's harassment constituted constructive eviction). The tort version of this claim requires either an actual eviction, where the landlord ousts the tenant, or a constructive eviction, where the landlord's acts or omissions affect the tenant's use of the property and compel the tenant to vacate. *Ginsberg*, 141 Cal. Rptr. 3d at 82.

The Rule 7052 Memorandum Decision dismissed much of Mitchell's quiet enjoyment cause of action. As discussed therein, Colbert's first unlawful detainer action and the November 2016 Rent and Illegal Activities Notices (and accompanying unlawful detainer action) are protected by California's statutory litigation privilege (see Cal. Civ. Code § 47(b)). The 90 Day Notice is not so protected, however, and Mitchell asserts that Colbert's accusations in the 90 Day Notice were so upsetting that they drove him from the Unit. Mitchell, however, has not established that the covenant still existed when Colbert served the 90 Day Notice. "The covenant of quiet enjoyment, as codified in Civil Code section 1927, arises from a lease: 'An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring … .'" *Multani v. Knight*, 233 Cal. Rptr. 3d 537, 553 (Cal. Ct. App. 2018) (quoting Cal. Civ. Code § 1927.) "Under this section, there is an implied covenant on the part of a landlord that a tenant shall have quiet enjoyment and possession of the premises during the continuation of the term." *Id.* (citations omitted). Here, the lease terminated when

- 11 -

Mitchell failed to cure the rent defaults alleged in the November 2016 Notice. That notice contained forfeiture language consistent with Cal. Civ. Code § 1161.5, and Mitchell's failure to cure terminated the Lease and left him with a tenancy at sufferance.[10]

Even if the covenant still existed, Mitchell failed to demonstrate by a preponderance of the evidence that the 90 Day Notice violated it. Mitchell was entitled to peaceably occupy the Unit without substantial harassment from Colbert. The conduct that typically breaches the covenant of quiet enjoyment are acts that prevents the tenant from using the premises as a peaceful repose. "To constitute a breach of the covenant of quiet possession or a constructive eviction there must be active interference with the tenant's possession of the premises and a suit brought by the landlord against the tenant does not constitute such a breach nor can it be called a constructive eviction." *Stockton Theatres, Inc. v. Palermo*, 268 P.2d 799, 802 (Cal. Ct. App. 1954). Here, Mitchell alleges that Colbert's service of the 90 Day Notice was so egregious that it required him to find another apartment and a less stress-inducing landlord. Admittedly, some of Colbert's conduct was less than desirable, particularly her refusal to accept the outcome of the unlawful detainer trial and her decision to include allegations in the 90 Day Notice that were beyond her personal knowledge or simply so vague as to give little notice of the offending behavior. Yet, the evidence suggests that there was substance to some of the more serious allegations in the 90 Day Notice. Colbert had a legitimate concern regarding who was occupying the Unit and whether it was being used for prostitution, Hall credibly testified regarding this issue, and Mitchell's blanket denial was an insufficient rebuttal.[11] While some of the 90 Day Notice's allegations may have been

---

[10] The court does not believe that Colbert's dismissal of her second unlawful detainer action resurrected the Lease, since the dismissal did not preclude Colbert from bringing another unlawful detainer action based on the November 2016 Notice.

[11] Colbert certainly had the right to inspect the garbage bags that were left on the side of the Property, and her review of their contents did not constitute harassment. Mitchell mentions in his trial brief that the other witness who regularly visited the Unit -

- 12 -

stress inducing because they were simply false, others may have generated the same reaction because they were accurate.  Moreover, no one unambiguously stated that Mitchell vacated the Unit primarily because of Colbert's eviction notices.  Elaine Miller testified that one of the main reasons she wanted to move Mitchell was his difficulty with the stairs, which is a reason unrelated to the eviction notices.  Accordingly, Mitchell has not established by a preponderance of the evidence that Colbert breached the covenant of quiet enjoyment.

**Violation of Cal. Civ. Code § 1942.5 and Common Law Right Against Retaliation**

Mitchell has not demonstrated by a preponderance of the evidence that Colbert unlawfully retaliated against him under California Civil Code section 1942.5(a).  California Civil Code section 1942.5(a) prohibits a landlord from seeking to recover possession of a dwelling, cause a tenant to vacate the premises involuntarily, or increase rent or decrease services within 180 days of certain events so long as the tenant is not in default of their rent.  The events which trigger the 180 day "quiet" period include: (1) a tenant's good faith written notice of "dilapidations rendering the premises untenantable" or a suspected bedbug infestation, or an oral complaint regarding tenantability; (2) a tenant's notice to an "appropriate agency" to correct a "condition relating to tenantability"; (3) an inspection or issuance of a citation resulting from a complaint described in paragraph (2) of which the landlord did not have notice; (4) the commencement of a judicial or arbitration proceeding involving tenantability; and (5) the entry of a judgment or signing of an arbitration award which determined the issue of tenantability against the landlord.  Cal. Civ. Code § 1942.5(a).

Mitchell is not entitled to relief under § 1942.5 because he failed to demonstrate that the allegedly offensive conduct at issue – the various unlawful detainer notices and complaints – were served/and or commenced within 180 days of any oral complaint regarding tenantability.  The only events which may have triggered § 1942.5 are

---

Elaine Miller – did not testify that the Unit was being used for prostitution.  Of course, she was never asked about this.

Case: 19-41729   Doc# 396   Filed: 06/16/22   Entered: 06/16/22 11:28:29   Page 13 of 25

Mitchell's plumbing complaints.  Yet Mitchell did not introduce any evidence which allows this court to determine, by a preponderance of the evidence, exactly when he made these complaints. And while the Unit did, on occasion, fail an OHA inspection, these inspections were not initiated at Mitchell's request but instead were part and parcel of Colbert's obligations as a section 8 landlord.[12]  In addition, Mitchell defaulted on his rent payments after September 2016.

Nor did Colbert violate Mitchell's common law right against retaliation.  The common law right against retaliation requires an involuntary eviction (s*ee Banuelos v. LA Investment, LLC,* 161 Cal. Rptr. 3d 772 (Cal. Ct. App. 2013)), and the evidence indicates that Mitchell left the Unit, in part, due to his need to find an elevator apartment building.

Mitchell also seeks relief under Cal. Civ. Code § 1942.5(c).[13] Mitchell argues that Colbert repeatedly violated § 1942.5(c) by failing to make repairs, decreasing services and issuing multiple termination notices culminating in two unlawful detainer actions.

Subsection (c) provides,

---

[12] The court agrees with Mitchell that § 1942.5 claims are not protected by the litigation privilege. *See Winslett v. 1811 27th Avenue LLC,* 237 Cal. Rptr. 3d 25 (Cal. Ct. App. 2018).  While the court recognizes that California Courts of Appeal are divided on this issue, this court believes that the caselaw holding the litigation privilege inapplicable is more persuasive. *Compare Banuelos v. LA Investment, LLC,* 161 Cal. Rptr. 3d 772, 778–80 (Cal. Ct. App. 2013), *and Winslett*, 237 Cal. Rptr. 3d 25 (Cal. Ct. App. 2018), *with Felman v. 1100 Park Lane Associates*, 74 Cal. Rptr. 3d 1 (Cal. Ct. App. 2008).  Section 1942.5(c) is more specific than California Civ. Code § 47(b) and was later enacted. *Winslett*, 237 Cal. Rptr. 3d at 39. Further, the application of the litigation privilege to Mitchell's claims would wrongly limit the scope of § 1942.5(c) and undermine the California Supreme Court's instruction to liberally construe § 1942.5 to achieve its legislative purpose. *Id.* at 40; *see also Action Apartment Assn., Inc. v. City of Santa Monica*, 163 P.3d 89, 98 (Cal. 2007) (recognizing exceptions to the litigation privilege when the statute is more specific than the litigation privilege and would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege). Accordingly, the court may consider the September 2016 Rent Notice and unlawful detainer action, the November 2016 Rent and Illegal Activities Notices and related unlawful detainer action, the 90 Day Notice and January 4, 2017 herein.

[13] The court applies the version of § 1942.5 that was in effect in 2016.  Section 1942.5 has since been amended. The court notes that the differences between the two versions of the statute are primarily that subsection (c) was re-lettered to (d), the term "lessee" replaced the phrase "he or she," and the phrase "notwithstanding subdivision (a)" was added to the beginning of subsection (c).

It is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

Cal. Civ. Code § 1942.5(c) (Deering 2016).

Section 1942.5 does not define the term "retaliatory" or "retaliation." "When a word is not defined by statute, [courts] normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). A word's ordinary or natural meaning can often be discerned by reference to the dictionary definition of the word. *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1118 (9th Cir. 2015). Black's Law Dictionary defines retaliation as "the act of doing someone harm in return for actual or perceived injuries or wrongs; an instance of reprisal, requital, or revenge." *Retaliation, Black's Law Dictionary* (11th ed. 2019).

Mitchell did not demonstrate by a preponderance of the evidence that Colbert retaliated by decreasing services, failing to make repairs, or raising his rent. This court finds, however, that Colbert retaliated against Mitchell by serving the November 2016 Rent Notice two days after the November 2016 verdict in the first unlawful detainer action. Colbert brought the September 13th unlawful detainer action against Mitchell for failing to pay the entire rent owed each month from November 2015 to June 2016, and she alleged Mitchell owed $1,096. Mitchell exercised his right to contest the unlawful detainer action, and he prevailed. The jury found that Mitchell did not fail to pay rent and that Colbert sought to recover possession of the premises without good faith, honest intent or ulterior motive. Two days later, Colbert issued the November 2016 Rent Notice alleging Mitchell owed $1,558 in rent—the same amount Colbert alleged in the September 2016 unlawful detainer action plus two months' rent of $231 which Colbert refused to accept during the unlawful detainer litigation. The November 2016 Rent Notice stated Mitchell had three

- 15 -

days to pay $1,558 or to deliver up possession of the premises. The service of the November 2016 Rent Notice constituted impermissible retaliation. Instead of simply (and solely) appealing the adverse judgment, she filed a second unlawful detainer action to recover the same rent which the jury had determined was not in arrears. To skirt around the jury's verdict, the November 2016 Rent Notice put an accounting spin on the rent at issue. Regardless of how she described the rent default, the unlawful detainer jury had determined that Mitchell was current with these rent payments. Mitchell testified that November 2016 Rent Notice stressed and confused him, because he understood, rightfully, that he had prevailed at trial and did not owe rent for the period in question.

Mitchell did not establish by a preponderance of the evidence that the other eviction notices or litigation were retaliatory. The court is not persuaded that Colbert served the September 2016 Rent Notice or commenced her initial unlawful detainer action to retaliate against Mitchell. OHA did adjust Mitchell's rent, and this rent change (and Mitchell's conceded failure to pay the rent increase) prompted the September 2016 Rent Notice and unlawful detainer action. The November 2016 Illegal Activities Notice, subsequent unlawful detainer action, and 90 Day Notice were also not retaliatory acts under § 1942.5(c). While the November 2016 unlawful detainer action and the 90 Day Notice state that Mitchell owed the rent the jury said he did not, these two documents contain additional allegations (*i.e.*, criminal activity) that constituted grounds to evict Mitchell. Finally, because Colbert's small claims action was not an eviction action, it did not fall within the scope of § 1942.5(c).

Colbert contends that she served the November 2016 Rent Notice on the advice of counsel, and that she therefore cannot be held liable for its contents. The court rejects this argument. Regardless of whether this argument is an affirmative defense or simply evidence that she acted in good faith,[14] Colbert has not persuaded the court that she fully

---

[14] *See e.g.*, *Nunez v. Pennisi*, 193 Cal. Rptr. 3d 912, 926 (Cal. App. Ct. 2015) ("Good faith reliance on the advice of counsel . . . is a complete defense . . ."); *Ashby v. Famers Ins. Co.*, 2006 U.S. Dist. LEXIS 97764, at *10 (D. Ore. Feb. 28, 2006) ("The advice-of-

- 16 -

and honestly discussed all pertinent facts with her lawyer and in good faith followed his advice. *See Bertero v. National General Corp.*, 529 P.2d 608, 616 (Cal. 1974). Colbert did not describe any conversation or communication she had with her counsel or introduce into evidence any emails, texts, or other correspondence she exchanged with him. Nor did her attorney testify during the evidentiary hearing. Absent some evidence of the exact advice received, the court cannot excuse Colbert's conduct on this ground.

Section 1942.5 provides that any lessor who violates § 1942.5 is liable to the lessee for actual damages and punitive damages (of not less than $100 but not more than $2000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression or malice with respect to the retaliatory act. Actual damages represent the amount that will compensate the injured party for all detriment sustained by them as the proximate result of the wrongdoer's acts, regardless of whether the wrongdoer could have anticipated the damage suffered. *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists*, 39 Cal. Rptr. 64, 81 (Cal. Ct. App. 1964).

Mitchell seeks damages for his emotional distress. Although harm caused by emotional distress constitutes "actual damages," (*see* Cal. Civ. Code § 3333), Mitchell is required to demonstrate more than a subjective state of discomfort. *Lee v. Bank of America*, 267 Cal. Rptr. 387, 390 (Cal. Ct. App. 1990). Under California law, damages for emotional distress unaccompanied by physical injury are awarded only if the emotional distress is "severe, i.e., substantial or enduring as distinguished from trivial or transitory." *Id.* "Further, 'California courts have limited emotional suffering damages to cases involving either physical impact and injury to plaintiff or intentional wrongdoing by defendant. Damages for emotional suffering are allowed when the tortfeasor's conduct, although negligent as a matter of law, contains elements of intentional malfeasance or bad faith.'"

---

counsel defense is generally considered to be an affirmative defense."). *But see Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961) ("Advice of counsel is a partial defense offered to disprove a mens rea element of a crime."); *Howard v. S.E.C.*, 376 F.3d 1136, 1147 (D.C. Cir. 2004) ("Reliance on the advice of counsel need not be a formal defense . . .").

- 17 -

*Id.* (citations omitted).

Mitchell has met this standard. Mitchell's poor health prevented him from eloquently expressing his anger, frustration, and ultimately emotional distress caused by Colbert's retaliatory act. His testimony, albeit halting, was palpable. In addition, Colbert's repeated demand for rent and threat to evict, coming only days after the jury verdict, was an intentional, bad act. The fact that emotional distress damages are difficult to measure does not dissuade this court from awarding such damages. Mitchell, however, only provided this court with a limited amount of evidence to measure his damages. His testimony was the only evidence which described the extent of his emotional distress. He offered no expert testimony and Elaine Miller did not offer much commentary on this topic. Given the state of the evidence, the court awards Mitchell $15,000 in emotional distress damages.

Section 1942.5 also authorizes this court to award punitive damages, and Mitchell must demonstrate by a preponderance of the evidence that Colbert is guilty of fraud, oppression or malice.[15] To show malice, "[t]he defendant must intend to cause injury to the plaintiff *or* the defendant must engage in despicable conduct with a willful or conscious disregard of the rights of the plaintiff." *George F. Hillenbrand, Inc. v. Insurance Co. of North America*, 128 Cal. Rptr. 2d 586, 610–11 (Cal. Ct. App. 2002); *see also* Cal. Civ. Code § 3294. "'Despicable conduct' is conduct which is so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary decent people." *George F. Hillbrand, Inc.*, 128 Cal. Rptr. 2d at 611. Fraud requires evidence of "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby

---

[15] The "punitive damages" under § 1942.5(f) are distinct from punitive damages under California Civil Code § 3294, because of the minimum and maximum levels of punitive damages set by the California Legislature. *Rich v. Schwab*, 75 Cal. Rptr. 2d 170, 176 (Cal. Ct. App. 1998); *see also People v. First Federal Credit Corp.*, 128 Cal. Rptr. 2d 542, 548–49 (Cal. Ct. App. 2002). Thus, Mitchell was not required to present evidence of Colbert's financial condition.

- 18 -

depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294. Oppression requires "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.*

While this court expresses its grave concern regarding Colbert's conduct, Mitchell has not demonstrated by a preponderance of the evidence that her conduct was fraudulent, malicious or oppressive.

**City of Oakland's Tenant Protection Ordinance**

The City of Oakland's Tenant Protection Ordinance ("TPO")[16] provides legal recourse to tenants who are harassed by their landlord. A landlord violates the TPO when he commits one of the following acts in bad faith: 1) Threatening to or interrupt, terminate, or fail to provide housing services; 2) Failing to perform repairs and maintenance; 3) Failing to perform due diligence when completing repairs; 4) Abusing their right of access to the rental unit; 5) Removing personal property, furnishings, or any other items without the prior written consent of the tenant; 6) Influencing a tenant to vacate a rental unit through fraud, intimidation or coercion including by threatening to report the tenant to ICE; 7) Offering payments to a tenant to vacate more than once in 6 months; 8) Attempting to coerce a tenant to vacate with offer(s) of payments to vacate in addition to threats or intimidation; 9) Threatening the tenant, by word or gesture, with physical harm; 10) Substantially and directly interfering with a tenant's right to quiet use and enjoyment of the rental unit as that right is defined by California law; 11) Refusing to accept or acknowledge receipt of a tenant's lawful rent payment; 12) Refusing to cash a rent check for over 30 days unless a written receipt for payment has been provided to the tenant; 13) Interfering with a tenant's right to privacy; 14) Requesting information that violates a tenant's right to privacy; 15) Committing repeated acts that substantially interfere with or disturb the comfort, repose, peace or quiet of any tenant lawfully entitled

---

[16] The Tenant Protection Ordinance is codified in Oakland Municipal Code § 8.22.600 et seq. (The court will refer to the Ordinance as the "TPO").

- 19 -

to occupy the premises and that cause, are likely to cause, or are intended to cause any person who is lawfully residing at the premises to vacate; and 16) Removing a housing service for the purpose of causing the Tenant to vacate the rental unit. Oakland, Cal., Ordinance 13,265 § 8.22.640(A) (Nov. 5, 2014). A landlord may also violate the TPO by failing to provide notice of it to tenants under § 8.22.640(E). *Id.* at § 8.22.640(E). While the TPO should be liberally construed "to achieve its purposes and preserve its validity," it does not interfere with a landlord's right to lawfully evict a tenant under California law or the City of Oakland's Just Cause for Eviction Ordinance. *See id.* at § 8.22.640(C).

Mitchell has not demonstrated by a preponderance of the evidence that he is entitled to relief under the TPO. The potential violations herein are those stated in paragraphs 6, 10, and 15 above, and this court, in both its Rule 7052 Memorandum Decision and herein, has found that Colbert did not breach the covenant of quiet enjoyment and, notwithstanding the unwieldy nature of the 90 Day Notice, may have had good cause to evict Mitchell. Further, Mitchell did not provide sufficient evidence regarding his allegation that Colbert failed to give Mitchell notice of the TPO, and thus did not meet his burden of proof.

**Oakland's Just Cause Ordinance and the Litigation Privilege**

Mitchell also alleges that Colbert's unlawful detainers and other eviction tactics violated the City of Oakland's Just Cause Ordinance.[17] For the reasons stated in the Rule 7052 Memorandum Decision, any JCO claims arising from the September 2016 Rent Notice and unlawful detainer action, the November 2016 Rent and Illegal Activities Notice and subsequent unlawful detainer action, and the January 2017 small claims action are protected by the litigation privilege. Mitchell's JCO claims thus rise or fall on the merits of the 90 Day Notice.

---

[17] The Just Cause Ordinance is codified in Oakland Municipal Code § 8.22.300 et seq. (The court will refer to the Ordinance as the "JCO").

The JCO's objective is "to defend and nurture the stability of housing and neighborhoods in the city of Oakland by protecting tenants against arbitrary, unreasonable, discriminatory, and retaliatory evictions, thereby maintaining diversity in Oakland neighborhoods and communities while recognizing the rights of rental property owners." Oakland, Cal., Ordinance 12,537 § 8.22.330 (July 17, 2007). It seeks to accomplish these goals by requiring landlords to establish good or just cause when seeking to evict certain tenants.

Section 8.22.360(A) of the JCO states that "No landlord shall endeavor to recover possession, issue a notice terminating tenancy, or recover possession of a rental unit in the city of Oakland unless the landlord is able to prove the existence of one of the following grounds," which grounds include 1) failure to pay rent to which the landlord is legally entitled; 2) a tenant's failure, after first receiving a preliminary cease and desist written notice from the landlord, to stop violating a material term of the tenancy; 3) a tenant's failure, after receiving a preliminary cease and desist written notice from the landlord, to stop willfully causing substantial damage to the premises beyond normal wear and tear; 4) a tenant's failure, after first receiving a preliminary cease and desist written notice from the landlord, to avoid disorderly conduct that is destroying the peace and quiet of a property's other tenants; and 6) use of the rental unit or the premises' common areas for an illegal purpose including the manufacture, sale, or use of illegal drugs. *Id.* at § 8.22.360(A). An owner's desire for higher rent does not constitute a just or good cause to evict.

The JCO further provides that a "landlord shall not endeavor to recover possession of a rental unit unless at least one of the . . . [above] grounds is stated in the notice and that ground is the landlord's dominant motive for recovering possession and the landlord acts in good faith in seeking to recover possession. *Id* at § 8.22.360(B)(2). The eviction notice must also inform the tenant that they can seek advice regarding the eviction notice from the City of Oakland's Rent Board. *Id.* at § 8.22.360(B)(6). Notably, the JCO is

Case: 19-41729    Doc# 396    Filed: 06/16/22    Entered: 06/16/22 11:28:29    Page 21 of 25

silent about the specificity of the eviction notice's allegations or the impact of including extraneous allegations (that perhaps would not constitute just cause to evict) in the eviction notice.

Notwithstanding Colbert's argument to the contrary, the JCO's notice requirements and remedies applied to the Unit and the 90 Day Notice.[18]  The JCO covers all Oakland rental units except those exempted by § 8.22.350, and the Unit does not fall within its exemptions. Moreover, the JCO applies to lease termination notices that, under California law, precede the commencement of an unlawful detainer proceeding.

There are at least two JCO violations arising from the 90 Day Notice.  Although the 90 Day Notice accuses Mitchell of substantially damaging the Unit and Property and interfering with the peace and quiet of the Property's other tenants, Colbert did not issue cease and desist letters before she served the 90 Day Notice.  *See* § 8.22.360(B)(4). Mitchell also argues that none of the alleged violations in the 90 Day Notice constituted Colbert's true, dominant motive in seeking to evict Mitchell.  He argues that Colbert's real motivation was to find a tenant willing to pay more rent.  While Colbert certainly testified that she wanted more rent from the Unit, she also expressly a deep concern regarding the alleged criminal activity occurring in the Unit, which eviction ground was included in the 90 Day Notice.  This concern was an equally dominant motive, and the allegations in the 90 Day Notice regarding illegal conduct was not "pretextual."  Randy Hall credibly testified that the Unit's spare bedroom was being used for prostitution and that he had been solicited while working on the Unit's plumbing.  Under the JCO, the commission of illegal activity in a rental unit is grounds to evict.  Thus, even though the

---

[18]  Colbert points to the Remedies section of the JCO (§ 8.22.370) to argue that the JCO does not apply to the 90-Day Notice.  Her argument ignores, however, the language in § 8.22.360(A) which explicitly references a notice to terminate a tenancy. It also is difficult to argue that the 90 Day Notice was not an initial and critical step under California law in her "endeavor" to recover possession of the Unit. Finally, § 8.22.370(B) provides a remedy for violating the JCO regardless of whether the 90-Day Notice constitutes an attempt to recover possession.

90-Day Notice included unfounded and extraneous allegations, it did not violate the JCO in this regard.

Section 8.22.370 of the JCO states that

> Whenever a landlord . . . wrongfully endeavors to recover possession or recovers possession of a rental unit in violation of Subsection 6(A) [8.22.360 A], the tenant . . . may institute a civil proceeding for injunctive relief, money damages of not less than three times actual damages (including damages for mental or emotional distress), and whatever other relief the court deems appropriate. In the case of an award of damages for mental or emotions distress, said award shall only be trebled if the trier of fact finds that the landlord acted in knowing violation of or in reckless disregard of this ordinance. The prevailing tenant shall be entitled to reasonable attorney's fees and costs pursuant to order of the court.

*Id.* at § 8.22.370(A)(2). Mitchell has not established that Colbert's JCO violations proximately damaged him. The JCO violations are minor and involve the failure to serve preliminary cease and desist notices, and the court has already determined that any mental or emotional distress caused by the 90 Day Notice may very well have been caused by Colbert's bonafide concern regarding prostitution.

**H. Unfair Business Practices; Cal. Bus. & Prof. Code §§ 17200 et seq., 17500**

Section 17200 et seq. of the California Business and Professions Code provide civil remedies for unfair competition. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 883 (Cal. 2011); Cal. Bus. & Prof. Code § 17206 (Deering 2021). Unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200 (Deering 2021). Section 17200's "unlawful" prong incorporates violations of other laws and makes them actionable under this section. *Klein v. Chevron USA, Inc.*, 137 Cal. Rptr. 3d 293, 326 (Cal. Ct. App. 2012). "Virtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a section 17200 'unlawful' violation." *Id.* at 326-27 (citing *Paulus v. Bob Lynch Ford, Inc.*, 43 Cal. Rptr. 3d 148, 165 (Cal. Ct. App. 2006)).

Case: 19-41729   Doc# 396   Filed: 06/16/22   Entered: 06/16/22 11:28:29   Page 23 of 25

Mitchell pins his Unfair Business Practices claims on the various common law and statutory claims that this court addressed in the Rule 7052 Memorandum Decision and herein. Only one of those claims have merited damages (*see* discussion of Mitchell's claim under California Civil Code § 1942.5(c)). However, while § 1942.5(c) claims are exempt from the litigation privilege, Unfair Business Practices causes of action are not. *See Rubin v. Green*, 847 P.2d 1044, 1054 (Cal. 1993) ("the unfair competition statute does not override the litigation privilege"). Thus, Mitchell cannot recover on this claim.

Mitchell's counsel shall prepare an appropriate order consistent with the court's findings, and to extent necessary and authorized, seek to tax costs.

***END OF ORDER***

Case: 19-41729    Doc# 396    Filed: 06/16/22    Entered: 06/16/22 11:28:29    Page 24 of 25

1

COURT SERVICE LIST

2

3      Sonja Nicolle Colbert
       P.O. Box 31894
4      Oakland, CA 94604

5

6      Other recipients are ECF participants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28