Marc Voisenat (CSB# 170935)
2329A Eagle Avenue
Alameda, Ca. 94501
Tel: (510) 263-8664
Fax: (510) 272-9158

Attorney for Debtor-In-Possession
Sonja Nicolle Colbert

## United States Bankruptcy Court

## Northern District of California

In re:

Sonja Nicolle Colbert

　　　　　　Debtor-In-Possession.

Case No.: 19-41729

Chapter 11

## COMBINED PLAN OF REORGANIZATION
## AND DISCLOSURE STATEMENT

## April 11, 2023

## INTRODUCTION

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 100% of their allowed claims on the effective date of the plan. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [TBD]. The court will hold a hearing on confirmation of the Plan

on [TBD] at [TBD].

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows Debtor's monthly income and expenses. Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan. Exhibit 5 shows Debtor's monthly income and expenses related to each investment property.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

## PART 1: TREATMENT OF SECURED CREDITORS

**Creditors' Rights Remain Unchanged.**

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|--------------------------|
| 1A | Travis Credit Union – Claim 1 | 100 Peppercorn Ct., Vallejo, Ca. 94591 |

| 1B | Wells Fargo Bank - Claim 3 | 847 E 18th St., Oakland, Ca. |
|----|------------------------------|-----------------------------------|
| 1G | Rushmore Loan Management Services – Claim 4 | 1109 Seminary Ave. Oakland, CA 94621 |
| 1D | JP Morgan Chase Bank, N.A. - Claim 10 | 7974 MacArthur Blvd., Oakland, Ca. – Claim was paid from court approved sale of the collateral. |
| 1C | JP Morgan Chase Bank, N.A. Claim 9 | 1451 Drake Way, San Pablo, CA 94806-4126 |
| 1E | JP Morgan Chase Bank – Claim 12 | 156 Marcus Ave, Richmond, Ca. |
| 1F | JP Morgan Chase Bank, N.A. – Claim 13 | 836 So. 49th St, Richmond, Ca.  94804 |

These creditors' legal, equitable, and contractual rights remain unchanged with respect to the above collateral.  The confirmation order will constitute an order for relief from stay. Creditors in these classes shall retain their interest in the collateral until paid in full.  **These secured claims are not impaired and are not entitled to vote on confirmation of the Plan.**

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(a) General Unsecured Claims[1].**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Payment Amount |
|------------------|-----------------|--------------|-------------------|----------------|
| City of Oakland #8929 | 184.95 | | 184.95 | 184.95 |
| City of Oakland #8931 | 184.95 | | 184.95 | 184.95 |
| City of Oakland #1431 | 246.60 | | 246.60 | 246.60 |

[1] The debtor listed several creditors on schedule F as disputed. A claim or interest is disputed if listed on Debtor's bankruptcy schedules as disputed, contingent, or unliquidated and no proof of claim or interest has been filed. See §§ 502(a), 1111(a).  Any creditor who failed to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution. F.R.B.P Rule 3003(c)(2). In re City of Stockton, 909 F.3d 1256, 1278 fn.14 (9th Cir. 2018).

| | | | | |
|---|---|---|---|---|
| City of Oakland #4696 | 246.60 | | 246.60 | 246.60 |
| CSE Safeguard Insurance Company (Debtor settled her case and does not owe this creditor any money. See Dkt #85) | 0 | N | 0 | 0 |
| Doris DeLeon Mardel Realty and Loans Inc. | 0 | Y | 0 | 0 |
| Verizon by American InfoSource as agent – Claim 5 | 392.12 | Y | 392.12 | 392.12 |
| Western Gold Insurance Agency (Debtor settled her case and does not owe this creditor any money see Dkt #85) | 0 | N | 0 | 0 |
| Cleveland Mitchell | 15000 | N | 10,865.80 | 10,865.80 |
| Total | $16255.22 | | 12,121.02 | 12,121.02 |

Allowed claims of general unsecured creditors not treated as small claims (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Percent Plan.** Class 2(a) and 2(b) creditors will receive **100%** of their allowed claim on the effective date.

Creditors in this class may not take any collection action against Debtor so long as the Debtor is not in material default under the Plan (defined in Part 6(c)).

**Disputed Claims.** Debtor shall create a reserve for disputed claims in the amount of the claim unless the claim is estimated for distribution in a different amount under 11 U.S.C.§502(c).

Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. Debtor must file objections to disputed

claims no later than 180 days after entry of the confirmation order.

If a disputed claim becomes an allowed claim, Debtor must immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be returned to Debtor.

**This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**Class 2(b) Insured Tort Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Payment Amount |
|---|---|---|---|---|
| Tisha Rose – Claim 6 | $125,000 | Y | 0 | $0 – Case was settled and paid by the debtor's insurance company |
| Susan Cazares - Claim 7 | $162,000 | Y | 0 | $0 – The debtor's policy limits are sufficient to cover the amount demanded in the state court action. Ms. Cazares **is not** seeking punitive damages in this case |

These creditors have received relief from the automatic stay to pursue their claims against debtor's insurance company in state court. Tisha Rose has already settled her claim. Susan

Cazares' claim is pending. On the Susan Cazares case, the debtor is represented by her insurance carrier. The carrier is providing an unqualified defense with policy limits of $500,000. The carrier will not cover any punitive damages. This coverage is set forth in Exhibit 6. However, in her operative complaint, Susan Cazares has not demanded any punitive damages against the debtor or this estate. As such, the policy limits are sufficient to pay Ms. Cazares' claim in full.

The current demand sought by Cazares is approximately $90,000. This amount is below the policy limit and will be paid by the carrier if the case proceeds to judgment.

The Debtor will continue to prosecute Cazares claim before the State Court or any Court to which an appeal from the State Court Order, and will not attempt to obtain a determination of such matters before the Bankruptcy Court, except (i) in connection with establishing the aggregate amount of Allowed Claims for purposes of evaluating the feasibility of the Plan, and the aggregate amount necessary to fund adequately the disputed Claims escrow, and (ii) to the extent the Debtor has an objection based on a matter that is not the subject matter of the State Court Proceedings.

Nothing herein precludes the Debtor from asserting in the Bankruptcy Court or in any other forum any other defense or objection to any Rose or Cazares Claims.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**

(a) Professional Fees.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

The following professionals have agreed to accept payment over time as follows. Payments will be made on the effective date.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| Marc Voisenat | $5,000 | $5,000 | 1 |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)  Other Administrative Claims.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).  All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
|  |  |

(c)  Tax Claims.  Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code.  Payments will be made monthly, due on the 1st day of the month, starting the effective date of the plan.  To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| N/A | | | | |

**PART 4:        EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) Executory Contracts/Unexpired Leases Assumed.  Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder.  Post-confirmation obligations will be paid as they come due.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| None, all of debtor's renters are month to month tenants | | | | |

(b) Executory Contracts/Unexpired Leases Rejected.  Debtor rejects the following executory contracts and/or unexpired leases.

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| None | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed rejected.

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a)  Discharge.  Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b)  Vesting of Property.   On the Effective Date, all property of the estate and interests of the

Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c)  Plan Creates New Obligations.  Except as provided in Part 6(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan.  Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a)  Creditor Action Restrained.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan.  Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b)  Obligations to Each Class Separate.  Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c)  Material Default Defined.  If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve

upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the

interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**

(a) <u>Effective Date of Plan</u>.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>.  Debtor will create a reserve for disputed claims.  Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed.  If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.  Any funds no longer needed in reserve shall be returned to Debtor.

(c) <u>Cramdown</u>.  Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>.  Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

      Debtor believes that causes of action for claims for relief exist against the following

parties:

| Party | Credit or Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Rose v Colbert and counter-claim against Rose filed in the State Court | Y | Breach of Habitability. The debtor filed a cross-complaint against Rose. This case has settled. | 0 | N |
| Cazares v Colbert Pending in the State Court | Y | Personal Injury claim that occurred in one of the rental units owned by the debtor. The plaintiff is not seeking punitive damages.<br><br>The debtor had filed a cross-complaint, but the cross-defendant demurred which was granted without leave to amend.<br><br>Plaintiff recently filed a motion to amend the complaint which was heard on March 8, 2023 and denied. | 162,000 | Y |
| Colbert v Stangl Pending in the State Court | N | Trespass Action – No cross-complaint filed. The case was bifurcated. The main case has been concluded and it is under submission. Once the trial court renders a decision, a jury will determine any damages if plaintiff prevails. | 400,000 | Y |

| Party | Credit or Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Kimberly Robin Alexander regarding the Estate of Dorothy T. Marsh | N | Kimberly Robin Alexander is the daughter of Dorothy T. Marsh. Ms. Marsh passed away on 11/21/2008.<br><br>Ms. Alexander seeks to set aside the grant deed recorded on January 2, 2008, transferring to the debtor the real property located at 1864 11th Avenue, Oakland, Ca. and the grant deed recorded on August 9, 2005 transferring to the debtor the real property located at 847 E 18th Street, Oakland, Ca. Each of the recordings referenced above gave constructive notice of the transfers to Ms. Alexander. C.C.Code §1213; See also, Parsons v. Tickner, 31 Cal.App.4th 1513, 1525, 37 Cal. Rptr. 2d 810 (1995) (finding that courts apply the delayed discovery rule if (1) the fraud is hard to discover or (2) the defendant has a confidential or fiduciary relationship with the creditor)<br><br>Moreover, Ms. Alexander received constructive notice of the transfer of those properties from the Amended Order Correcting Deeds Re: Title to Properties recorded on June 20, 2019<br><br>At the time the above case was filed, Kimberly Robin Alexander was not a known creditor of the debtor. In fact, the debtor contends she was not and is not a creditor of the debtor nor this estate and has no enforceable claim. On November 10, 2022, the Probate Court authorized Ms. Alexander to file a claim in this case but she never filed a claim. | $0.0 | N |

| Party | Credit or Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|-------|---------------|-----------------|-----------------|-----------------------------------|
| Colbert v. Miao Lan Lana Yu, Doris DeLeon Pending in the State Court | N | Breach of Contract. In December 2018, Doris De Leon, represented Miao Lan Lana Yu in a failed home purchase of 1006 Regatta in Hercules from Colbert for $1.1 million. The offer was accepted, and Yu paid $10,000 in consideration for the agreement. Yu failed to deposit the remaining funds into escrow for closing and the deal was never consummated. Defendant filed a cross-complaint, debtor filed an anti-slap motion that was denied, debtor appealed, and the appellate court reversed the lower court and awarded fees and the cross-complaint has been dismissed with prejudice. No trial date has been set | 300,000 | Y |
| Colbert v First American Mortgage Solutions et al, Option One/Sand Canyon and CIT Group RG-20049549 | N | Slander of Title, CIT has never removed its lien after the debtor paid it off back in 2003. The debtor has filed a lawsuit to remove the lien. In November, the State Court granted Debtor's motion to file a fourth amended complaint. No cross-complaint against the debtor was filed. All defendants have filed an answer. There is a trial date set for May 20, 2024 | 2,000,000 | Y |
| American Modern Insurance Company Po Box 5323 Cincinnati, Ohio 45201-5323 | N | Failure to defend the Cleveland Mitchell claim. No case has been filed yet. | 500,000 | Y |
| Law Offices of Andrew Wolf P.C. 1615 Broadway 4th Floor, Oakland, CA 94612 | N | Malicious Prosecution | 60,000 as of March 31, 2021 | Y |

(g) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

Sonja Nicolle Colbert
100 Peppercorn Ct.
Vallejo, CA 94591

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. §1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

Dated: <u>April 11, 2023</u>

<u>/s/Sonja Nicolle Colbert</u>
Debtor

<u>/s/ Marc Voisenat</u>
Attorney for Debtor

**Attorney Certification**

2    I, <u>Marc Voisenat</u>, am legal counsel for the Debtor(s) in the above-captioned case and

3    hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual

4    Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of

5    California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except

6    as specified below, there have been no alterations or modifications to any provision of the

7    Standard-Form Plan.

8    The following provisions of the Standard-Form Plan have been altered or otherwise

9    modified.

10   Added a footnote regarding unfiled claims page 3.

11   Added totals column to Class 2(a) on page 4.

12   Added special language as to Class 2(c) pages 5-7

13   I declare that the foregoing is true and correct. Executed this 11th day of April 2023.

14

15                                                    _____/s/ Marc Voisenat

16                                                    Marc Voisenat, Attorney for
                                                     Debtor

17

18

19

20

21

22

23

24

25

**Exhibit 1 - Events That Led To Bankruptcy**

The debtor was having issues with tenants who were generating a lot of litigation in Alameda County. The debtor decided to take her real properties out of the rental market and sale them. Just prior to the petition date, the debtor was in the process of closing escrow on the real property located at 1109 Seminary Avenue, Oakland, Ca 94621. However, escrow could not close because a very old lien in favor of The CIT Group, Inc. popped up. (CIT) The debtor provided the title company all the documents from a previous escrow showing that the CIT loan had been satisfied years earlier. However, escrow refused to close, and CIT was non responsive.

At about the same time, the debtor learned that one of her former tenants, Cleveland Mitchell, had sued her, had taken her default and was in the process of obtaining a default judgment. The debtor contends she was never served with the underlying lawsuit.

Concerned that the tenant would get a default judgment and encumber all her real properties, the debtor filed the instant chapter 11 to protect her properties. The debtor has since set aside the default entered in the Cleveland Mitchell lawsuit. However, the CIT lien remains. The debtor has filed a lawsuit against CIT to remove the lien in State Court. The case of Colbert v Stangl is set for trial in or about August 2, 2020. In the case of Colbert v. Miao Lan Lana Yu, the defendant's broker, Doris DeLeon, filed a cross-complaint against the debtor on September 10, 2019 after the debtor filed bankruptcy.

On or about December 27, 2019, the debtor on 1006 Regatta Pt. Hercules, CA 94547 paying off secured creditor The Bank of New York Mellon fka Bank of America (Claim #11) and netted approximately $650,000 for the benefit of the estate. On November 6, 2020, the debtor closed escrow on 7974 MacArthur Blvd, Oakland, Ca. 94605 paying off JPMorgan Chase Bank, National Association (Claim 10), as servicer for Wells Fargo Bank, N.A. as trustee for WaMu Mortgage pass-through Certificates Series 2004-PR2 Trust (Claim #10).

At the time the case was filed, the debtor had pending state court actions styled Colbert v Stangl

which is now in trial.  In Colbert v. Miao Lan Lana Yu, the case is pending and designated to go to mediation March 2023.  The Court granted relief from stay in the Rose v Colbert case, which has now been settled, and the Cazares v Colbert case which is still pending.

After the above case was filed, the debtor had submitted claims for the Rose and Cazares claims and the insurer CSE refused to provide coverage prompting the debtor to file a state court action against CSE which is now pending and scheduled for a hearing on December 12, 2022.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: [100 Peppercorn Ct., Vallejo, Ca. 94591]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $763,389 | 1st 324,843.01 | 45,600 | 54,000 | 250,000 | 387,545 |

Real Property #2: [847 E 18th St., Oakland, Ca.]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $1,002,550 | 1st 164,007.56 | 80,000 | 198000 | 0 | 560,542.5 |

Real Property #3: [1451 Drake Way, San Pablo, CA 94806-4126]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $617,065. | 1st 120,681.93 | 30400 | 49940 | 0 | 416,043.07 |

Real Property #4: [156 Marcus Ave, Richmond, Ca.]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 510,972.00 | 1st 116,030.22 | 28000 | 43230 | 0 | 323,711.78 |

Real Property #5: [836 So. 49th St, Richmond, Ca. 94804]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $492,269 | 0 | 30400 | 51700 | 0 | 410,169 |

Real Property #6: [1109 Seminary Avenue, Oakland, Ca. 94621]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $902,322 | 1st 125,483.64 | 46400 | 111540 | 0 | 618,898.36 |

Real Property #7: [1864 11th Avenue, Oakland, Ca. 94606]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $1,326,700 | 0 | 96000 | 198000 | 0 | 1,032,700 |

Real Property #8: [1364 N. Hollywood Dr Las Vegas, NV, 89110]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $510,662 | 0 | 28000 | 43,230 | 0 | 439,432 |

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| 1999 Ford F150 | 3000 | | 3000 | 3000 |
| 2007 Ford F550 | 4000 | | 0 | 4000 |
| 2004 Ford Dump Truck | 8000 | | 0 | 8000 |
| 1990 Ford Dump Truck | 2000 | | 0 | 2000 |
| 2004 Cadillac XLR | 14000 | | | 14000 |
| 2006 Mercedes Wagon | 7000 | | 0 | 7000 |
| 1999 GMC Denali | 2000 | | 0 | 2000 |
| Household Furnishings | $6000 | 0 | 6000 | $6000 |
| Electronics | $4000 | 0 | 4000 | $4000 |
| Remington Gun | 100 | | 0 | 100 |
| Clothes | $1500 | 0 | 1500 | $1500 |
| Jewelry | $1000 | 0 | 1000 | $1000 |
| Cash | $0 | 0 | 0 | $0 |
| Checking | $401,000 | 0 | 0 | $401,000 |
| Total | $453,600 | 0 | 15,500 | $453,600 |

| Net Proceeds of Real Property and Personal Property | $4,642,641.50 |
|---|---|
| Recovery from Preferences / Fraudulent Conveyances | 0 |

| | |
|---|---|
| Chapter 7 Administrative Claims | 0 |
| Chapter 11 Administrative Claims | 15,000 |
| Priority Claims | 0 |
| Chapter 7 Trustee Fees | $35,000 |
| Chapter 7 Trustee's Professionals | $50,000 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $4,556,141.5 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $12,121. |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 100% |

**Exhibit 3 - Monthly Income and Expenses**

| Income | Amount |
|---|---|
| Debtor's Permanent Disability | 1160 |
| Child Support | 0 |
| Child Social Security | 0 |
| Pension | 4,133.00 |
| Negative Cash Flow on Investment Property (Exhibit 5) | -1738.81 |
| **A. Total Monthly Income** | 3,554.19 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | 0 |
| Retirement Contributions (401k, IRA, PSP) | 0 |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities) | 3100 |
| Household Expenses (food) | 600 |
| Transportation Expenses (car payments, insurance, fuel) | 400 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | 300 |
| **B. Total Monthly Expenses** | 4400 |
| **C. Disposable Income** (Line A - Line B) | $845.81 |

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Class 2(a) | $12,121 |
| **D. Total Plan Payments** | $12,121 |

| | Amount |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | $411,619.17 |

**Exhibit 4 - Effective Date Feasibility**

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date |  | $411,619.17 |
| Payments on Effective Date |  |  |
| U.S. Trustee Fee | 4875 |  |
| Administrative Claims | 5000 |  |
| Priority Claims | 0 |  |
| General Unsecured Claims Class2(a) | $12,121 |  |
| B. Total Payments on Effective Date |  | $21,996 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) |  | $389653.17 |

**Exhibit 5 - Investment Property Analysis**

**Properties with Positive Monthly Cash-Flow:**

Real Property #1 Income: [156 Marcus Ave, Richmond, Ca.]

| Rental Income | Mortgage (PITI) | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| 2500 | 1,404.25 | 0 | 0 | | 1,095.75 |

Real Property #2 Income: [836 So. 49th St, Richmond, Ca. 94804]

| Rental Income | Mortgage (PITI) | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| 2500 | 0 | 0 | 0 | 60 | 2,450.00 |

Real Property #3 Income: [1109 Seminary Avenue, Oakland, Ca. 94621]

| Rental Income | Mortgage (PITI) | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| 2283 | 1,519.35 | 0 | 0 | 510.00 | 253.65 |

| **A. Total Positive Cash Flow** | $3,799.40 |
|---|---|

**Properties with Negative Monthly Cash-Flow:**

Real Property #4 Income: [847 E 18th St., Oakland, Ca.]

| Rental Income | Mortgage (PITI) | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| 0 | 1453.64 | 104 | 381.31 | | -1938.95 |

Real Property #5 Income: [1451 Drake Way, San Pablo, CA 94806-4126]

| Rental Income | Mortgage (PITI) | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| 0 | 1492.13 | 0 | 0 | | -1492.13 |

Real Property #6 Income: [1864 11th Avenue, Oakland, Ca. 94606]

| Rental Income | Mortgage (PITI) | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| 0 | 0 | 100 | 352.47 | 11 | -463.47 |

| **B. Total Negative Cash Flow** | -3894.55 |
|---|---|



November 23, 2020

VIA EMAIL

Sonja Colbert
PO Box 31894
Oakland, CA 94604
Sonjacolb@gmail.com

| | | |
|---|---|---|
| Case | : | *Susan Cazares v. Sonja Colbert, et al.*, Case No. RG19033658 |
| Insured | : | Sonja Colbert |
| Policy No. | : | CAF1114820 |
| Claim No. | : | 597634 |
| Date of Loss | : | January 7, 2019 |

Ms. Colbert,

This letter is intended to provide you with an update on the above-referenced matter. To confirm, on or about January 8, 2020, it was reported to CSE Safeguard Insurance Company ("CSE") that on September 3, 2019, the Law Offices of Andrew Wolff filed the above-referenced lawsuit against you in the Superior Court of California, Alameda County, on behalf of their client Susan Cazares. The information presently in our possession indicates Ms. Cazares is claiming bodily injuries as a result of alleged dangerous conditions within a rental unit located at 7974 MacArthur Blvd Oakland, CA 94605. At the time of loss, your Landlord Insurance Policy carried Premises Liability coverage with a $500,000 per-occurrence limit.

CSE has agreed to provide an unqualified defense to you individually and as Trustee of The Sonja Nicolle Colbert Living Trust in this case. As you may already be aware, on September 16, 2019, Mr. Wolff filed a Statement of Damages on behalf of Ms. Cazares. In this filing, he specifies that his client is seeking $50,000 in punitive damages against you. Although there is no legal basis for punitive damages against you, please be advised that California Insurance Code § 533 prohibits insurance coverage for punitive or exemplary damages.

Please be advised that the law offices of Bremer, Whyte, Brown & O'Meara is no longer CSE's appointed defense counsel in this matter. We have referred this matter to Skane Wilcox. Their information is as follows:

Skane-Wilcox, LLP
Partner: Paul O'Keefe, Esq.
33 New Montgomery Street, Suite 1250
San Francisco, CA 94105
T: (415) 431-4150

Email: POkeefe@skanewilcox.com

Mr. O'Keefe will be contacting you soon to introduce himself and explain the process of substituting in as your new attorney-of-record. Please work with counsel to transfer representation of you and the Trust to defense counsel and do not file any documents in this case. We thank you in advance for providing him with your full cooperation.

Please don't hesitate to call the undersigned with any questions.

Regards,



Jeremy Lennon, Litigation Specialist
CSE Safeguard Insurance Company
Telephone: (626) 440-5858
Email: JLennon@cseinsurance.com

CC:     Marc Voisenat, Esq. (via e-mail:  voisenat@gmail.com)